UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY FUENTES,<br><br>        Petitioner,<br><br>   v.<br><br>F.X. CHAVEZ,<br><br>        Respondent. | No.  2:11-cv-2225 JAM AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding with appointed counsel under 28 U.S.C. § 2254.  Petitioner was convicted of first degree murder by a Sacramento County jury in 2003, and sentenced to a term of imprisonment of 76 years to life.  His federal petition for writ of habeas corpus was filed on August 23, 2011.  Respondent's answer was filed on October 10, 2012, and petitioner's traverse was filed on February 8, 2013.  For all the reasons that follow, the undersigned recommends that the petition be denied.

FACTUAL BACKGROUND

Petitioner was convicted of first degree murder in the death of his father's next door neighbor, 85-year old Alfred Augusta.  The prosecution presented the following evidence at trial.

Petitioner had borrowed a wrench and socket from Augusta, saying that he needed them to fix his father's car.  Petitioner and his father were not on speaking terms at the time.  A day or two before the homicide, Augusta went to the home of the senior Mr. Fuentes to inquire about the

1  status of the repairs.  Augusta was upset to learn that there was nothing wrong with the car.  He
2  told Fuentes to tell his son to return the tools.  Also a couple of days before his death, Augusta
3  mentioned to one of his daughters that he was mad at petitioner for not returning a tool.

4        On the afternoon before the homicide, petitioner's friend Jesse Luna saw petitioner
5  standing on the bottom step of Augusta's front porch.  Augusta was inside the open front door
6  yelling at petitioner.  Petitioner said something like, "I'll get them back to you, I'll go get them
7  right now."  That night petitioner went to his father's house, and his father told him to return
8  Augusta's tools.  Petitioner was upset by the request.

9        On the morning of the homicide, a neighbor saw petitioner walking from Augusta's house
10  toward his father's house.

11        That afternoon the Sheriff's Department received a report that a subject was down in the
12  back yard of Augusta's house.  Responding officers found Augusta lying on his back in the grass,
13  dead.  There was an indentation in the bloody grass near the victim's head, and blood stains on
14  the nearby concrete patio and planter pots.  There were no signs of a struggle inside the house,
15  nor any signs of forced entry.  A tool shed in the back yard was undisturbed.

16        The autopsy revealed that Augusta had been severely beaten, and was killed by blunt force
17  trauma to the head.  The victim had lacerations on the back of the head and behind his left ear,
18  caused by multiple blows.  He had major skull fractures,[1] bruises and lacerations to the face,
19  twelve freshly broken ribs, and a bruised and torn lung.  His spine was broken and partially
20  separated at chest level.  The spinal injury was consistent with being kicked or stomped.  There
21  were no signs of defensive wounds.  A cement block or pillar that was found in the patio area had
22  strands of hair on it, and was collected as evidence.

23        The police questioned defendant several times, and videotapes of the interviews were
24  played for the jury.  Petitioner's story changed repeatedly in response to questioning, and
25  petitioner repeatedly lied.  In early questioning he claimed to have been at work all day, and then
26  claimed to have seen a suspicious stranger at Augusta's house a few days earlier.  He first denied

27
28  ---
[1] A web of fracture lines spanned the entire circumference of Augusta's skull.

2

having been at Augusta's house at all on the day of the homicide, then claimed that he had gone to see Augusta about the tools and left him alive and well.  Eventually petitioner reported that he and Augusta had argued about the tools, a scuffle ensued, and Augusta fell and hit his head.  The details of petitioner's story changed repeatedly as officers told him what they had learned from the coroner about Augusta's injuries.  Eventually petitioner admitted to hitting Augusta on the head with a concrete foundation pier.  Petitioner told police the pier weighed 40 or 50 pounds.  Petitioner acknowledged that Augusta was lying on the ground when he hit him in the head with the pier.

Later that night, petitioner accompanied officers to the scene and re-enacted the incident.  The re-enactment was videotaped, and played for the jury.  Petitioner said that after hitting Augusta with the pier, he washed the blood off the pier and put it back where he had found it.  He said that he did not mean to kill August, but only to knock him out.  Petitioner acknowledged hitting Augusta with the pier twice.  Both times he threw the pier at Augusta's head while Augusta lay on the ground.  In another interview two days later, petitioner denied hitting or kicking Augusta.  He said the victim's broken ribs might have been caused by the pier being thrown at his head and also hitting his body.

The defense presented no witnesses, but contested premeditation and deliberation.  Counsel argued for a manslaughter verdict on grounds that the killing had resulted from an argument that escalated into a fight, in which any intent to kill was formed spontaneously in response to provocation.  Counsel relied on petitioner's statements to police that during their argument Augusta had grabbed him and said, "Fuck you, Jerry, I hate you.  You fucking Mexicans are all alike."  The defense argued that petitioner had reacted in sudden rage but without deliberation to this verbal abuse.

The jury found petitioner guilty of first degree murder and found a deadly weapon enhancement true.

////

////

////

PROCEDURAL HISTORY

I. State Court Proceedings

Judgment was entered on October 21, 2003. Petitioner was sentenced to seventy-six years to life in prison. The court of appeal affirmed the judgment on November 10, 2004. The California Supreme Court denied review on February 16, 2005.

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on May 22, 2007. This petition included a bare-bones claim of ineffective assistance of counsel for failing to investigate mental health issues. The petition was denied on October 10, 2007.

Petitioner filed a petition for writ of habeas corpus in Sacramento County Superior Court on June 17, 2008. This petition included a claim of ineffective assistance of counsel for failing to investigate mental health defenses, supported by exhibits including a 2003 Report of Neuropsychological Testing and Evaluation by John Wicks, Ph.D. After issuing an Order to Show Cause on two issues (timeliness and the ineffective assistance claims) and appointing counsel, the court ultimately denied the petition as successive and untimely on July 22, 2009.

Petitioner submitted the same ineffective assistance claim to the California Court of Appeal on October 29, 2009, and that petition was denied on November 19, 2009. Petitioner submitted a petition containing the same claim to the California Supreme Court on February 8, 2011. This petition also presented a claim that petitioner was actually innocent of first degree murder. The state's highest court denied the petition on August 12, 2011, with citation to In re Robbins, 18 Cal. 4th 770, 780 (1998) and In re Clark, 5 Cal. 4th 750, 767-69 (1993).

II. Federal Court Proceedings

Petitioner filed his federal habeas petition in pro per on August 23, 2011. On December 1, 2011, respondent moved to dismiss the petition as untimely. After petitioner sought an extension of time to oppose the motion, referencing his borderline mental retardation, the magistrate judge appointed counsel. Counsel subsequently opposed the motion to dismiss and sought equitable tolling based on petitioner's cognitive impairments and mental health issues, as well as on grounds of physical illness and denial of access to legal materials. Petitioner sought discovery and an evidentiary hearing related to equitable tolling. The magistrate judge granted the request

for discovery, and vacated the motion to dismiss subject to re-noticing upon conclusion of discovery.

On October 4, 2012, respondent filed an answer.[2]  The answer asserted the statute of limitations and procedural default doctrine as affirmative defenses, and also answered on the merits.  Petitioner's traverse was filed on February 8, 2013.

At no time following the appointment of counsel did petitioner seek to amend the petition or to expand the record with any additional evidence.

PROCEDURAL DEFENSES

Although respondent has asserted both untimeliness and procedural default, he expressly invites the court to bypass the procedural defenses and reach the merits.  Petitioner joins the request to bypass procedural default, and reasserts his entitlement to equitable tolling of the statute of limitations on the basis of the previous briefing.  Because the undersigned agrees that it is appropriate to proceed to the merits, only a brief discussion of the procedural defenses is necessary here.

I.    Statute of Limitations

A one-year statute of limitations applies to federal petitions for writ of habeas corpus.  28 U.S.C. § 2244(d).  Absent circumstances not present here, the limitations period runs from the date that the state court judgment becomes final by the conclusion of direct review or the expiration of time to seek direct review.  § 2244(d)(1)(A); Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010).  The time during which a "properly filed" application for state post-conviction relief is pending does not count toward this one-year period.  § 2244(d)(2); Porter, 620 F.3d at 958.  However, a petition filed after the expiration of the statute of limitations has no effect on the timeliness analysis.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.), cert. denied, 540 U.S. 924 (2003) (state petition filed after expiration of § 2244 period cannot resuscitate expired period).

Petitioner's conviction became final on May 17, 2005, when the time expired to seek

---

[2] The motion to dismiss was not re-noticed.

5

certiorari in the United States Supreme Court after the California Supreme Court denied review on direct appeal.  See Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999) (limitations period begins to run 90 days after the state supreme court's denial, when the time to seek certiorari expires).   Petitioner filed no applications for state habeas relief during the year following finality, so the limitations period elapsed without any tolling on May 17, 2006.   The federal petition, filed over 5 years late, is therefore time-barred absent equitable tolling.

A habeas petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations only if the petitioner shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way and prevented timely filing.  See Holland v. Florida, 130 S. Ct. 2549, 2562 (2010); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009). The diligence required is "reasonable diligence," not "maximum feasible diligence."  See Holland, 130 S.Ct. at 2565; see also Bills v. Clark, 628 F.3d 1092, 1096 (9th Cir. 2010).

In order to constitute "extraordinary circumstances," the circumstances alleged in support of tolling must make it impossible to file a petition on time, and must be the cause of the petitioner's untimeliness.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).  This is a very high threshold, "lest the exceptions swallow the rule."  See Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir.), cert. denied, 537 U.S. 1003 (2002).  Mental incompetence or mental illness can constitute an extraordinary circumstance supporting equitable tolling.  Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003); Bills, 628 F.3d at 1097. A petitioner seeking tolling for mental impairment must satisfy a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the

6

        totality of the circumstances, including reasonably available access to assistance. . . .

Bills, 628 F.3d at 1099-1100.

      In the case before the court, petitioner seeks equitable tolling on grounds of mental impairment, physical illness, and impaired access to his legal materials. He has submitted supporting evidence including but not limited to the declarations of petitioner, his appellate counsel and his present habeas counsel; the 2003 neuropsychological report that is the basis of his substantive claims, which identifies numerous cognitive impairments; documents showing that petitioner read at a fourth-to-sixth grade level from 2006 through 2010; and three pages of medical records that document prison psychiatric services provided to petitioner in 2004 and 2005, which are offered as examples.

      If it is necessary to decide the equitable tolling issue presented in this case, an evidentiary hearing will be required. See Roy v. Lampert, 455 F.3d 945, 950 (9th Cir. 2006) (evidentiary hearing required when petitioner makes good faith allegation that would, if true, entitle him to equitable tolling), cert. denied, 549 U.S. 1317 (2007); Bills, 628 F.3d at 1101 (non-frivolous showing of a severe mental impairment during the limitations period requires a hearing). However, if petitioner's claims must be denied regardless of their timeliness, this court need not reach the statute of limitations defense. Because the undersigned concludes for the reasons explained below that petitioner is not entitled to relief on the merits, fact-finding related to equitable tolling is not necessary. See Ramos-Martinez v. United States, 638 F.3d 315, 324 (1st Cir. 2011) (approving district court's decision to bypass equitable tolling issue and proceed to merits of claims in § 2255 case).

  II.     Procedural Default

      The procedural default doctrine bars consideration in federal habeas of claims that were rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment. Walker v. Martin, 131 S.Ct. 1120, 1127 (2011). In Walker, the Supreme Court held that California's timeliness bar constitutes an independent and adequate state law ground that supports default. Id. at 1128-29. Because petitioner's 2011

petition in the California Supreme Court was denied with citation to In re Robbins, 19 Cal. 4th 770 (1998) and In re Clark, 5 Cal. 4th 767-769 (1993), that denial was based on a finding of untimeliness and not on the merits.  Id. at 1128.

Notwithstanding the holding in Walker, California petitioners continue to dispute the adequacy of the state's untimeliness bar on theories not considered by the Supreme Court. Determinations of adequacy can be complicated and time-consuming.  See Bennett v. Mueller, 322 F.3d 573 (9th Cir.) (establishing burden-shifting framework and treating adequacy as an empirical question) , cert. denied, 540 U.S. 938 (2003).  Even where a state procedural bar is adequate to support default, a petitioner can overcome default by demonstrating cause and prejudice.  Coleman v. Thompson, 501 U.S. 722, 753 (1991).  The cause and prejudice inquiry overlaps with the merits of petitioner's claims, because a petitioner must show that a meritorious claim was forfeited in order to demonstrate actual prejudice.  See Murray v. Carrier, 477 U.S. 478, 494 (1986); Correll v. Stewart 137 F.3d 1401, 1415-16 (9th Cir.), cert. denied, 525 U.S. 996 (1998).

A procedural default may also be overcome with proof of actual innocence.  Schlup v. Delo, 513 U.S. 298 (1995); House v. Bell, 547 U.S. 518 (2006).  Plaintiff here has presented a freestanding claim of actual innocence as grounds for relief.  In this context as well, the analysis related to default overlaps with (if it is not identical to) review of the merits.

Respondent invites the court to bypass procedural default in this case and proceed to the merits of petitioner's claims.  Answer, ECF No. 29 at 15, 16.  Petitioner concurs, requesting an opportunity for further briefing should the court choose to address procedural default.  Traverse, ECF No. 40 at 7.  In light of the potential complexity of the procedural default issue and the overlap of cause and prejudice analysis with the merits, the undersigned agrees that direct consideration of the merits is appropriate.  See Lambrix v. Singletary, 520 U.S. 518, 522−25 (holding that a federal court need not invariably resolve a state procedural bar issue first where it presents complicated issues of state law and the other issue is easily resolvable against the petitioner); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (proper to proceed to merits where procedural bar issue more complicated and result the same).  Like equitable tolling, this

8

defense need only be adjudicated if petitioner would be entitled to relief on the merits of his claims absent a bar to such relief. For the reasons now explained, petitioner's claims fail whether or not they are timely and/or defaulted.

## MERITS

I. <u>Ineffective Assistance For Failure To Present Mental Health Defense</u>

    A. <u>Petitioner's Allegations</u>

The petition alleges that trial counsel rendered ineffective assistance by failing to present a mental health defense based on the pretrial report of neuropsychologist John Wicks, Ph.D. Because the petition was filed in pro se prior to the appointment of counsel, the court construes the allegations liberally, see <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir.1992), as follows.[3]

Prior to trial, Dr. Wicks conducted a comprehensive neuropsychological evaluation of petitioner at the request of defense counsel. Dr. Wicks found that petitioner was borderline mentally retarded and cognitively impaired in numerous ways. The report identified sources of neurological damage including a history of substance abuse, and suggested that petitioner's impaired executive functioning and impulsivity had an organic basis.

Fourteen years prior to the Wicks report, in 1989, petitioner had been evaluated by Shawn Johnston, Ph.D. in relation to his suitability for CYA placement. Dr. Johnston found indications that petitioner suffered from a psycho-neurological deficit, and concluded that he was not "capable of fully mobilizing either his intellectual or emotional resources in effective problem-solving." Dr. Johnston's testing strongly suggested a diagnosis of Borderline Personality Disorder with narcissistic and antisocial features.

In 1990 petitioner was transferred from CYA to the California Medical Facility, where he was placed in the Department of Mental Health program. In 2000, presumably after his release from his first prison term and before the homicide that led to his present sentence, petitioner was involved in a car accident in which he sustained a head injury.[4]

---

[3] As previously noted, following appointment of counsel petitioner did not seek to amend the petition or to expand the record with additional evidence.
[4] The petition was supported by the reports of Drs. Wicks and Johnston, correctional mental (continued…)

Despite this evidence of brain injury and impaired mental functioning, trial counsel did not pursue a mental state defense. Petitioner's mental impairments would have provided a defense to first degree murder.

### B. Standard of Review

Respondent assumes that petitioner's ineffective assistance of counsel claim is subject to the constraints on habeas relief imposed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See, generally, Williams v. Taylor, 529 U.S. 362, 412 (2000). That statute provides that claims previously adjudicated on the merits by a state court can only support federal habeas relief if the state court judgment was objectively unreasonable in its application of federal law or its determination of facts. 28 U.S.C. § 2254(d). These standards apply whether or not the state court explained the basis for its decision. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). AEDPA standards do not apply if the state court judgment rested exclusively on procedural grounds, however, because such a judgment does not adjudicate the merits. See Cone v. Bell, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's Brady claim, federal habeas review is not subject to the deferential standard that applies under AEDPA . . . Instead, the claim is reviewed de novo."); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (where state supreme court rejected claim on procedural grounds, there is no merits adjudication entitled to AEDPA deference and district court reviews constitutional issue de novo), cert. denied, 539 U.S. 916 (2003).

Petitioner argues that the claim's merits should be reviewed de novo in this court, because the claim at issue was rejected by the California Supreme Court in 2011 on timeliness grounds. The court agrees. In Pirtle, the Ninth Circuit held that a claim rejected on procedural grounds in state court was subject to de novo merits review in federal habeas. When the federal court proceeds to the merits despite assertion of a procedural bar – either because the default doctrine is held not to bar merits review, as in Pirtle, or because the default issue is bypassed, as here -- §

---

health records from petitioner's previous period of incarceration, medical records documenting the 2000 car crash and head injury, and documents regarding his mental health classification and treatment in prison following the conviction at issue in this case.

1   2254(d) does not apply. Pirtle, 313 F.3d at 1167, 1168.

2   A bare-bones ineffective assistance claim had previously been presented in petitioner's 2007 petition to the California Supreme Court.[5] That petition was denied on the merits without discussion, and the claim it presented would therefore be subject to review under § 2254. See Harrington, 131 S. Ct. at 785. As petitioner notes, however, the 2007 claim did not mention and was not supported by Dr. Wicks' report, which is the centerpiece of the federal claim. Accordingly, the claim denied on the merits in 2007 is not in any meaningful sense the same claim that was denied on procedural grounds in 2011 and presented here. Respondent's substantive discussion of Dr. Wick's report indicates his agreement that the claim subject to review here is the expanded claim that was exhausted in 2011 and is described above.

In any event, this is not a case in which the outcome is determined by the standard of review. For the reasons explained below, the claim fails even under the more lenient de novo standard. See Berghuis v. Thompkins, 130 S.Ct. 2250, 2264 (2010) (where claim fails under de novo standard of review, it would also fail under AEDPA's heightened standard of deference to state court judgments).

### C. Law Governing Ineffective Assistance of Counsel

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). In evaluating counsel's performance, the court applies a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Counsel's strategic choices are generally accorded deference, but only if those decisions are reasonable and are based on

---

[5] The 2007 petition alleged in general terms that ". . . Petitioner was denied effective assistance of counsel at trial and on direct appeal because the Petitioner's mental health history was never explored nor was it mentioned or raised at trial . . ." Lodg. Doc. 5, Appendix to Petition at 9. This petition contained no specific facts regarding petitioner's mental health history or its possible significance to the defense, and was not supported by any mental health information that was extant at the time of trial.

11

1  reasonable investigations, research, and judgments.  Id. at 690-91; see also, Jones v. Wood, 114
2  F.3d 1002, 1010 (9th Cir. 1997) (strategic choices are not immune from challenge -- they must be
3  reasonable); Jennings v. Woodford, 290 F.3d 1006, 1014 (9th Cir. 2002) (to be reasonable,
4  tactical choices require sufficient evidentiary basis).
5        Prejudice means that the error actually had an adverse effect on the defense.  There must
6  be a reasonable probability that, but for counsel's errors, the result of the proceeding would have
7  been different.  Id. at 693–94.  A reasonable probability is a probability sufficient to undermine
8  confidence in the outcome.  Id.  A reviewing court need not address both prongs of the Strickland
9  test if the petitioner's showing is insufficient as to one prong.  Strickland, 466 U.S. 668 at 697.
10 "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
11 which we expect will often be so, that course should be followed."  Id. at 689.
12       D.  Analysis
13       There is no doubt that a criminal defense lawyer with a cognitively impaired or mentally
14 ill client has a duty to investigate the possible legal implications of the defendant's mental
15 defects, including potential mental state defenses.  See Jennings, 290 F.3d at 1016; Seidel v.
16 Merkle, 146 F.3d 750, 755-56 (9th Cir. 1998).   In this case, the petition and its exhibits easily
17 support the preliminary proposition that reasonably diligent counsel should have investigated
18 whether or not petitioner's mental impairments provided a defense to first degree murder by
19 raising a reasonable doubt about premeditation and deliberation.  However, nothing in the petition
20 or supporting evidentiary record provides a basis for determining whether or not trial counsel's
21 failure to present a mental health defense was a legitimate strategic decision based on reasonable
22 investigation.[6]  See Strickland, 466 U.S. at 690-91.  And even if petitioner could establish
23 unreasonable performance, the claim would fail because there has been an insufficient showing of
24 prejudice.  See id. at 689.
25       Petitioner relies on the Wicks report, which cannot support a finding of prejudice because

---

[6] See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations [of ineffective assistance] which are unsupported by a statement of specific facts do not warrant habeas relief.") (citing Boehme v. Maxwell, 423 F.2d 1056, 1058 (9th Cir. 1970)).

it simply did not address whether or how petitioner's identified impairments may have affected criminal intent. In his traverse, petitioner argues strenuously that Dr. Wicks' report "negated" premeditation and deliberation.[7] Dr. Wicks never mentioned the words premeditation or deliberation, however. He did not address petitioner's mental state at the time of the crime, did not evaluate the impact of the impairments he identified on the cognitive processes involved in premeditation or deliberation, and offered no opinion whatsoever about mental state defenses. Counsel retained Dr. Wicks for a "comprehensive neuropsychological evaluation," presumably as a preliminary screening tool, but the report did not indicate any questions of reference related to the existence of defenses to first degree murder -- or any other specific legal issue, such as competency. Accordingly, the report would be relevant to the performance prong of Strickland as evidence that counsel was on notice of a potential defense, see Seidel, 146 F.3d at 755, but it falls far short of establishing prejudice from the failure to develop and present a mental health defense.

Dr. Wicks found in relevant part as follows, on the basis of behavioral observations and a comprehensive battery of neuropsychological tests: Petitioner's IQ scores placed him in the borderline retarded range. He demonstrated no signs of psychosis. He was significantly impaired in memory and other cognitive functions directly related to learning. Test scores reflected attentional problems related to ADHD, and a pattern of impulsivity. Overall cognitive functioning was rated as mildly to moderately impaired. Cognitive flexibility and executive functioning were impaired. Dr. Wicks ruled out malingering. He concluded that petitioner functioned overall at a borderline retarded level, almost certainly had ADHD during his school-age years, and may have suffered further organic brain damage as the result of substance abuse and his 2000 head injury. Petitioner's executive functioning impairments "indicate problems with such higher level functions as abstract thinking, impulse control, and judgment." Dr. Wicks noted in conclusion, "These individuals [with impaired executive functioning] tend to be highly impulsive, self-destructive, and generally demonstrate poor social judgment. Substance abuse, of

---

[7] This argument is made in relation to petitioner's actual innocence claim, which the parties discuss first. The argument is equally applicable to the merits of the Strickland claim.

1 course, exaggerates these problems considerably." Wicks Report, ECF No. 1 at 21-81.

2   Petitioner was charged with first degree murder, which required proof beyond a reasonable doubt that the killing was "willful, deliberate, and premeditated." Cal. Pen. Code § 189. The jury was instructed in relevant part as follows:

> The word "willful". . . means intentional. The word "deliberate" means formed or arrived at or determined upon as the result of careful thought and weighing of considerations for an against the proposed course of action. The word "premeditated" means considered beforehand. . . .
>
> The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. . . . The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation as will fix an unlawful killing as murder in the first degree. . . .

RT 371-72; CT 111.

At the time of petitioner's trial, the defense of diminished capacity – the *inability* to form the required intent – had long been abolished. See People v. Castillo, 16 Cal. 4th 1009, 1013-14 (1997). Petitioner retained the ability to present mental health evidence, including expert witness testimony, raising a doubt about whether he *actually* lacked the required state of mind. See People v. Steele, 27 Cal. 4th 1230, 1253 (2002). To defeat a first degree murder verdict on this theory, counsel needed to present evidence that petitioner, due to the impairments identified by Dr. Wicks, did not in fact form a deliberate and premeditated intent to kill Alfred Augusta.

Petitioner has neither presented nor proffered any expert opinion that addresses petitioner's state of mind at the time of the homicide. The Wicks report identifies impairments that raise *questions* about intent, but it does not answer or even address those questions. At most, the Wicks report should have indicated to counsel that a more specific follow-up investigation into the viability of mental health defenses was warranted. Without a showing of the evidence that could have been developed by such an investigation, however, petitioner cannot establish prejudice under Strickland. See, e.g., Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice.");

14

1  Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what beneficial
2  evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the
3  prejudice prong of the Strickland test."), cert. denied, 517 U.S. 1111 (1996).
4  　　　　Petitioner argues in essence that the deficits identified by Dr. Wicks are so inherently
5  incompatible with premeditation and deliberation that the Wicks report, without more, creates the
6  reasonable probability of a different trial outcome. The court is unpersuaded, for several reasons.
7  First, the report does not indicate that Dr. Wicks (or any other expert) would have testified that
8  petitioner's deficits are inherently incompatible with premeditation or deliberation. Second, any
9  such general testimony regarding petitioner's incapacity to form the requisite intent would have
10 been inadmissible. See Castillo, supra. Third, a jury aware of Dr. Wicks' findings would not
11 have been likely to reach a different result. Reasonable jurors are not likely to have concluded
12 that petitioner's low intelligence negated premeditation and deliberation, neither of which require
13 intellectual sophistication. And although people with impaired executive functioning may, as a
14 class, be more likely than other people to act impulsively, that does not mean that petitioner's
15 particular act of repeatedly throwing a cement block at Augusta's head was not deliberately
16 intended to kill. Given the circumstances of the crime, a jury could reasonably have concluded
17 that petitioner despite his learning disabilities formed the required mental state in the course of
18 the confrontation with Augusta. See People v. Mayfield, 14 Cal. 4th 668, 767 (1997) (the process
19 of premeditation and deliberation can occur quickly); People v. Bolin, 18 Cal. 4th 297, 332
20 (1998) ("Thoughts may follow each other with great rapidity and cold, calculated judgment may
21 be arrived at quickly. . . .").
22 　　　　To be sure, there was no evidence in this case that petitioner went to Augusta's house on
23 the day of the homicide having planned to hurt him. As defense counsel argued, the murder
24 weapon was an object grabbed at the scene, likely in the midst of a confrontation. This fact, and
25 petitioner's statement that Augusta had used hateful and racist language, could together have
26 supported a jury's conclusion that petitioner simply "snapped." Defense counsel made this
27 argument. Although the Wicks report suggests the possibility that mental health evidence
28 consistent with the defense theory could have been developed, the report by itself does not make

1  that theory significantly stronger.  The jury rejected the "rash impulse" defense,[8] perhaps because
2  petitioner's many and repeated lies to the police about what had happened undercut the credibility
3  of his statement regarding the racist provocation.  In any event, the generalized findings of the
4  Wicks report do not create the reasonable probability of a different outcome that Strickland
5  requires.

6  Because petitioner's ineffective assistance claims fails under the de novo standard of
7  review, it would also fail under AEDPA's heightened standard.  See Berghuis, 130 S.Ct. at 2264.

8  II.   Actual Innocence
9   A.  Petitioner's Allegations
10  Again relying on the Wicks report, petitioner alleges that he is actually innocent of first
11  degree murder because he did not deliberate or premeditate.
12   B.  Standard of Review
13  Plaintiff's claim of actual innocence was denied by the California Supreme Court as
14  untimely, not on the merits.  Lodg. Doc. 12.  Because the claim was not adjudicated on the merits
15  in state court, the high hurdle of 28 U.S.C. § 2254(d) need not be satisfied.  Respondent appears
16  to seek application of AEDPA standards to the claim.  See ECF No. 29 at 7-11(setting forth
17  AEDPA standards as governing the case), 16 (arguing that state court denial of Claim One was
18  reasonable).  Respondent does not explain, however, why these standards would apply to a claim
19  that he contents is defaulted.  It is well established that a constitutional claim rejected by a state
20  court on procedural grounds is subject to de novo merits review in federal habeas.  See Cone, 556
21  U.S. at 472 ("Because the Tennessee courts did not reach the merits of Cone's Brady claim,
22  federal habeas review is not subject to the deferential standard that applies under AEDPA . . .
23  Instead, the claim is reviewed de novo."); Pirtle, 313 F.3d at 1167 (where state supreme court
24  rejected claim on procedural grounds, there is no merits adjudication entitled to AEDPA
25  deference and district court reviews constitutional issue de novo).

---

[8] "An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." People v. Stitely, 35 Cal. 4th 514, 543 (2005).

### C. Governing Legal Principles

The Supreme Court has articulated the standards for an actual innocence showing that will permit merits review of otherwise defaulted or time-barred claims. Shlup v. Delo, 513 U.S. 298 (1995) (defining actual innocence exception to procedural default doctrine); McQuiggin v. Perkins, 133 S.Ct. 1924 (2013) (recognizing actual innocence exception to statute of limitations). The high court has never held that a free-standing claim of actual innocence, untethered to the violation of an independent constitutional right, will support habeas relief. See Herrera v. Collins, 506 U.S. 390, 417 (1993) (assuming without deciding that the execution of an innocent person would violate the constitution).[9] Assuming for present purposes that the conviction of an innocent person in a non-capital case is unconstitutional and therefore provides grounds for relief, petitioner would have to affirmatively demonstrate that he is actually innocent. Carriger v. Stewart, 132 F.3d 463, 477 (9th Cir. 1997) (en banc). To satisfy this requirement, he must present evidence in light of which "it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327.

### D. Analysis

Respondent argues that petitioner does not really claim innocence, but merely contends that California is legally barred from punishing him. Answer, ECF No. 29 at 16. Respondent misapprehends both petitioner's theory and the law. Because the mental state of premeditation and deliberation is an essential element of first degree murder, affirmative evidence that petitioner did not premeditate and deliberate would indeed render him innocent of first degree murder (but would not preclude liability for a lesser degree of homicide). See Jackson v. Virginia, 443 U.S. 307, 316 (1979) (In re Winship, 397 U.S. 358 (1970), requires proof of every element beyond a reasonable doubt); see also Sandstrom v. Montana, 442 U.S. 510, 520-21 (1979) (applying Winship to intent element of deliberate homicide).

---

[9] The Herrera Court was dubious that such a freestanding right exists. Herrera, 506 U.S. at 400-405. Were this claim subject to review under § 2254(d), it would fail because no "clearly established Federal law" provides for relief. See Alberni v. McDaniel, 458 F.3d 860, 867 (9th Cir. 2006) (habeas petition must be denied where U.S. Supreme Court has not explicitly recognized the constitutional right asserted), cert. denied, 549 U.S. 1287 (2007).

17

In any case, petitioner's innocence claim fails because he has not established that no reasonably juror would find premeditation and deliberation in light of the Wicks report. See Schlup, 513 U.S. at 327. For the same reasons that petitioner's evidence does not support a finding of prejudice under Strickland, it does not satisfy the even more demanding standard of Schlup.

Even an expert report that affirmatively provides an alternative explanation for a homicide is insufficient to establish actual innocence of first degree murder. See Boyd v. Brown, 404 F.3d 1159, 1168 (9th Cir. 2005). The Ninth Circuit in Boyd rejected an actual innocence claim predicated on an expert affidavit that, unlike petitioner's here, directly disputed premeditation on psychiatric grounds. The court restated its rule that "the mere presentation of new psychological evaluations [not presented at trial] does not constitute a colorable showing of actual innocence." Id. (quoting Harris v. Vasquez, 949 F.2d 1497, 1515 (9th Cir. 1990)). In Griffin v. Johnson, 350 F.3d 956 (9th Cir. 2003), cert. denied, 541 U.S. 998 (2004), the court rejected an actual innocence claim that was based on a showing of low intelligence, organic brain dysfunction that impaired planning and initiation capabilities, and an expert opinion that in light of these deficits the petitioner may not have been able to form the requisite intent. The court noted that petitioner's diagnosed impairments did not preclude specific intent, and that post hoc expert evaluations are inadequate to establish actual innocence. Griffin, 350 F.3d at 965.

Petitioner's showing is plainly insufficient under Boyd and Griffin. While a mental health defense may or may not have worked at trial, the Wicks report cannot under Circuit precedent support habeas relief on actual innocence grounds.

REQUEST FOR EVIDENTIARY HEARING

The Traverse includes a request for an evidentiary hearing "to flesh out the mental health issues." ECF No. 40 at 17. Because the allegations of the petition and its supporting exhibits are insufficient to support relief, there is no basis for an evidentiary hearing. Even under pre-AEDPA standards, evidentiary hearings are appropriate only where the petitioner's allegations, if true, would entitle him to relief. Earp v. Ornoski, 431 F.3d 1158, 1170 (9th Cir. 2005), cert. denied, 547 U.S. 1159 (2006).

1    Petitioner's allegations of deficient performance by trial counsel are largely conclusory,
2 and unsupported by declarations or other evidence regarding pretrial investigation and
3 preparation. Petitioner establishes that counsel knew his client had cognitive deficits, and the
4 state court record reflects that no mental state evidence was presented at trial. The petition is
5 entirely silent, however, as to what counsel did and did not do after receiving the Wicks report
6 and before trial. General allegations that counsel failed to investigate a potential defense,
7 unsupported by a statement of specific facts, are insufficient. See James, 24 F.3d at 26.

8    As discussed at some length above, petitioner also has not pled facts sufficient to support
9 prejudice. Specifically, neither the petition nor its attachments – including the Wicks report –
10 specify what expert opinion could have been presented at trial regarding premeditation and
11 deliberation. See Grisby, 130 F.3d at 373. The Wicks report suggests an investigative direction,
12 but does not establish where investigation would have led. See Hendricks, 70 F.3d at 1042.
13 Accordingly, even if petitioner were to prove that counsel unreasonably failed to investigate
14 mental health defenses, he could not prevail under Strickland.

15    An evidentiary hearing is not a tool for petitioners to discover their cases, is an
16 opportunity for a properly pleaded case to be proved. Because the claims here are inadequate to
17 support relief, an evidentiary hearing is not necessary.

## CONCLUSION

19    For the reasons explained above, IT IS RECOMMENDED that the petition for writ of
20 habeas corpus be denied.

21    These findings and recommendations are submitted to the United States District Judge
22 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
23 after being served with these findings and recommendations, any party may file written
24 objections with the court and serve a copy on all parties. Such a document should be captioned
25 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
26 shall be served and filed within fourteen days after service of the objections. The parties are
27 ////
28 ////

advised that failure to file objections within the specified time may waive the right to appeal the District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 12, 2013

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE